FILED

**ORIGINAL**

RON BENDER (SBN 143364)
DAVID B. GOLUBCHIK (SBN 185520)
LEVENE, NEALE, BENDER, RANKIN & BRILL L.L.P.
1801 Avenue of the Stars, Suite 1120
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244

03 APR 28 PM 4:22

CLERK U.S. ........ ....
CENTRAL DISTRICT ... ....FORNIA
                                        ICC
BY   CM           ......TY

Attorneys for Chapter 11
Debtors and Debtors in Possession

Steven T. Gubner (SBN 156593)
EZRA BRUTZKUS GUBNER LLP
16830 Ventura Boulevard, Suite 310
Encino, California 91436
Telephone: (818) 995-0215
Facsimile: (818) 501-3615

Attorneys for Official Committee
Of Unsecured Creditors

## UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>CHORUS LINE CORPORATION,<br><br>      Debtor. | Case No.: LA 00-41578-ER<br>(CHORUS LINE CORPORATION)<br><br>Case No. LA 00-44669-ER<br>(CALIFORNIA FASHION INDUSTRIES, INC.)<br><br>Chapter 11 Cases |
| In re:<br><br>CALIFORNIA FASHION<br>INDUSTRIES, INC.,<br><br>      Debtor. | (Substantively Consolidated Under<br>Case No. LA 00-41578-ER)<br><br>**DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF REORGANIZATION** |
| ___  Affects Chorus Line<br>     Corporation only<br><br>___  Affects California<br>     Fashion Industries,<br>Inc. Only<br><br>_X_  Affects Both Cases | <u>Plan Confirmation Hearing:</u><br>Date:  [to be set]<br>Time:  [to be set]<br>Place:  Courtroom 1568<br>       255 E. Temple St.<br>       Los Angeles, CA 90012 |

1



# I. **INTRODUCTION**

Chorus Line Corporation, a Delaware corporation ("CLC"), and California Fashion Industries, Inc., a California corporation ("CFI" and collectively with CLC, the "Debtors"), are the Debtors in pending Chapter 11 bankruptcy cases. On November 13, 2000, certain petitioning creditors filed an involuntary petition against CLC under Chapter 7 of Title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The involuntary petition was assigned Bankruptcy Case Number LA 00-41578-ER. On December 14, 2000, CLC and CFI filed voluntary petitions under Chapter 11 of the Bankruptcy Code. Pursuant to orders entered by this Court on or about December 22, 2000, CLC's Chapter 11 case was dismissed and CLC's Chapter 7 case was converted to one under Chapter 11 of the Bankruptcy Code, and CFI's and CLC's cases were ordered jointly administered. The Debtors continue to manages their affairs as debtors in possession.

Chapter 11 allows the Debtors, and, under some circumstances, creditors and other parties in interest, to propose a plan of reorganization. A plan may provide for the Debtors to reorganize by continuing to operate, to liquidate by selling the assets of their estates, or a combination of both.

The Debtors and the Official Committee of Unsecured Creditors (the "Creditors' Committee", and collectively with the

Debtors, the "Plan Proponents") are the parties jointly proposing this Joint Plan of Reorganization (the "Plan"). This Plan is described in the Disclosure Statement (the "Disclosure Statement") which was mailed to you in the same envelope as this Plan.

This Plan is a liquidating plan. In other words, the Plan Proponents seek to accomplish payments under the Plan by creating a creditors' liquidating trust that will distribute to creditors that hold allowed claims the proceeds from the liquidation of the property, claims, rights and causes of action of the Debtors and their bankruptcy estates. The assets of both the CLC and CFI estates will be substantively consolidated and administered through the joint liquidating trust (the "Joint Liquidating Trust") which is attached as Exhibit "A" hereto.

The effective date of this Plan (the "Effective Date") will be the first business day which is at least eleven days following the date of entry of the Bankruptcy Court (the "Court") order confirming the Plan (the "Confirmation Order") when all of the following conditions to the effectiveness of the Plan have been satisfied: (a) there shall not be any stay in effect with respect to the Confirmation Order, as that term is defined below; (b) unless waived by the Plan Proponents, the Confirmation Order shall not be subject to any appeal or rehearing; and (c) the Plan and all documents, instruments and

agreements to be executed in connection with the Plan, including the Joint Liquidating Trust Agreement, shall have been approved by the Bankruptcy Court and executed and delivered by all parties to such documents, instruments and agreements.

## II. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A.   General Overview

As required by the Bankruptcy Code, this Plan classifies claims and interests in various classes according to their right to priority.   This Plan states whether each class of claims or interests is impaired or unimpaired.   This Plan provides the treatment each class will receive.

### B.   Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified.   They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.   As such, the Plan Proponents have not placed the following claims in a class.

#### 1.   Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtors' Chapter 11 cases which are allowed under Bankruptcy Code Section 507(a)(1).   The Bankruptcy Code requires that all administrative claims be paid on the Effective

4

1  Date, unless a particular claimant agrees to a different

2  treatment.

3      The following chart lists **all** of the Debtors' §507(a)(1)

4  administrative claims and their treatment under the Plan.

| **Name** | **Amount Owed** | **Treatment** |
|---|---|---|
| Clerk's Office Fees | $0 | Paid in full on the Effective Date out of the Debtors' Funds |
| Office of the U.S. Trustee Fees | $0 | Paid in full on the Effective Date out of the Debtors' Funds |
| Levene, Neale, Bender, Rankin & Brill L.L.P., bankruptcy counsel to the Debtors | $150,000 est. in excess of pre-petition retainer in the amount of $42,919.66 balance and post-petition interim fees and expenses paid in the amount of $286,648.98. | Paid in full out of the Debtors' Funds on the later of the Effective Date and the date the Court allows such fees and expenses |
| Ezra Brutzkus Gubner LLP, current counsel to the Creditor's Committee | $200,000 est. in excess of the $1,271,316.57 of post-petition fees and expenses paid to EBG. | Paid in full out of the Debtors' Funds on the later of the Effective Date and the date the Court allows such fees and expenses |
| Grobstein, Horwath & Co. LLP, Financial And Accounting Consultants And Advisors to the Debtors | $150,000 est. in excess of the $273,616.15 of post-petition fees and expenses paid to Grobstein. | Paid in full out of the Debtors' Funds on the later of the Effective Date and the date the Court allows such fees and expenses |
| Capello & McCann, special litigation counsel to the Debtors | $0 | Paid in full out of the Debtors' Funds on the later of the Effective Date and the date the Court allows such fees and expenses |
| Freedman & Taitelman, LLP, special trademark litigation counsel to the Debtors | $0 | Paid in full out of the Debtors' Funds on the later of the Effective Date and the date the Court allows such fees and expenses |
| Murray Hill Properties (landlord and administrative claimant) | $50,000.00 (per settlement) | Paid in full out of the Debtors' Funds on the Effective Date |

| TOTAL | $550,000.00 est. | |
|-------|------------------|--|

### Bankruptcy Court Approval of Fees Required:

The Bankruptcy Court must approve all professional fees and expenses listed in this chart before they may be paid. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must rule on the application. Only the amount of fees and expenses allowed by the Court will be required to be paid under the Plan. The administrative claim amounts set forth above simply represent the Plan Proponents' best estimate as to the amount of allowed administrative claims in these Cases. The actual administrative claims may be higher or lower. There may also be a small administrative claim amount attributable to expenses incurred by members of the Creditors' Committee.

By voting to accept the Plan, creditors are not acknowledging the validity of, or consenting to the amount of, any of these administrative claims, and creditors are not waiving any of their rights to object to the allowance of any of these administrative claims.

### 2.    Priority Tax Claims

Priority tax claims include certain unsecured income, employment and other taxes described by Section 507(a)(8) of the

Bankruptcy Code.    The Bankruptcy Code requires that each holder

of such a Section 507(a)(8) priority tax claim receive the

present value of such claim in deferred cash payments, over a

period not exceeding six years from the date of the assessment

of such tax.

The following charts list all of the Debtors' Section

507(a)(8) priority tax claims and their treatment under the

Plan:

| Description | Amount Owed | Treatment |
|---|---|---|
| Department of the Treasury - Internal Revenue Service | $96,939.50 (Claim No. 137) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| State of California, EDD | $17,240.65 (Claim No. 176) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| California State Board of Equalization (CLC) | $6,759.77 (Claim No. 196) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| California State Board of Equalization (CFI) | $25,189.24 (Claim No. 133 – amends Claim No. 132) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| City of Los Angeles, Office of Finance/Tax & Permit Division (CFI) | $70,957.93 (Claim No. 128) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| New York State, Department of Taxation and Finance (CLC) | $44.37 (Claim No. 268) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| New York State, Department of Taxation and Finance (CFI) | $12,280.50 (Claim No. 162) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
|---|---|---|
| City of New York, Department of Finance (CFI) | $43,040.10 (Claim No. 115) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
| --- | --- | --- |
| City of New York, Department of Finance | $59,400.00 (Claim No. 159) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed.<br><br>Amount in Dispute – incorrect taxpayer |

| Description | Amount Owed | Treatment |
| --- | --- | --- |
| Texas Comptroller (taxes for 1/1/97- 10/31/99) (CLC) | $12,636.43 (Claim No. 194) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
| --- | --- | --- |
| Texas Comptroller (taxes for 6/1/00- 11/30/00) (CFI) | $21,413.43 (Claim No. 101) | Paid in full out of the Debtors' Funds on the later of either (a) the Effective Date; or (b) date of entry of order resolving Debtors' objection to such claim if an objection is filed. |

| Description | Amount Owed | Treatment |
| --- | --- | --- |
| San Marcos CISC (Texas) | $1,644.53 (Claim No. 211) | Paid in full on the Effective Date out of the Debtors' Funds |

| Description | Amount Owed | Treatment |
| --- | --- | --- |
| South Carolina Department of Revenue | $6,511.38 (Claim No. 139) | Paid in full on the Effective Date out of the Debtors' Funds |

## C.   Classified Claims and Interests

### 1.   Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.   The Plan Proponents believe that there are no secured claims in these cases.

### 2.   Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Bankruptcy Code Sections 507(a)(3), (4), (5), (6), and (7) are required to be placed in classes.   These types of claims are entitled to priority treatment as follows:   the Bankruptcy Code requires that each holder of such a claim receive cash on the Effective Date equal to the allowed amount of such claim.   However, a class of unsecured priority claim holders may vote to accept deferred cash payments of a value, as of the Effective Date, equal to the allowed amount of such claim.   Attached to the Disclosure Statement as Exhibit "B" is a schedule setting forth all claims entitled to priority pursuant to 11 U.S.C. Sections 507(a)(3), (4), (5), (6), and (7).   The following charts list all classes containing the Debtors' secured claims and their treatment under the Plan:

///

///

///

///

///

| CLASS # | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Priority claims pursuant to 11 U.S.C. Sections 507(a)(3), (4), (5), (6), and (7)<br><br>Total amt of claims is estimated to be approximately $400,000. | N | Not Impaired; The claims in this class are not entitled to vote on the Plan | The class 1 allowed claim will be paid in full on the Effective Date out of the Debtors' Funds |

## 3.   Classes of General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Bankruptcy Code Section 507(a). The following chart identifies the Plan's treatment of the class containing all of the Debtors' non-priority general unsecured claims (see Exhibit "B" to the Disclosure Statement for detailed information about each claim):

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 2 | All general unsecured claims<br><br>Total amt of claims is estimated to be approximately $8,000,000. | Impaired; allowed claims<br><br>In this class are entitled to vote on the Plan. | Holders of class 2 allowed claims will be paid on a pro rata basis from that portion of the Debtors' Funds remaining after all allowed secured claims have been paid in full, if any, all allowed administrative claims have been paid in full, all allowed tax claims have been paid in full, all allowed priority claims have been paid in full, and the Joint Liquidating Trust and professional fees and expenses incurred after the Effective Date have been paid in full. Based upon the figures set |

11

| | | | forth above, the Plan Proponents estimate that there will be approximately $1,500,000 of Debtors' Funds remaining for distribution to holders of class 2 allowed claims (assuming a total of $100,000 is incurred by the Joint Liquidating Trust and professionals after the Effective Date) plus any additional recoveries obtained after Plan confirmation from the pursuit of avoidance causes of action. Assuming that there are a total of $300,000 of class 2 allowed claims, the Plan Proponents estimate that each holder of a class 2 allowed claim will receive approximately 19% of the amount of their class 2 allowed claims out of the remaining Debtors' Funds plus their pro rata share of any additional recoveries obtained from the pursuit of avoidance causes of action. The treatment of holders of class 2 allowed claims described in the Plan shall be in full settlement and satisfaction of all class 2 allowed claims. |
|---|---|---|---|

## 4. Class of Interest Holders

Interest holders are the parties who hold an ownership interest (i.e., equity interest) in the Debtors. The following chart identifies the Plan's treatment of the class of interest holders:

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|
| 3 | Equity interests in CLC, including holders of stock options, warrants, etc. | Impaired; holders of class 3 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code | On the Effective Date, all class 3 interests will be deemed cancelled without the need for either the Debtors or the class 3 interest holders to take any further actions. Interest holders will not receive any distribution or retain any property under the Plan on account of their Interests. As soon as possible after holders of class 2 allowed claims have been paid in accordance with the terms of the Plan, the corporations of the Debtors will be dissolved, and the Joint Liquidating Trust shall take such steps as are necessary to effectuate such dissolution. |

///

///

///

///

///

///

///

///

13

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 4 | Equity interests in CFI, including holders of stock options, warrants, etc. | Impaired; holders of class 4 interests are not entitled to vote on the Plan because they are deemed to have not accepted the Plan pursuant to Section 1126(g) of the Bankruptcy Code | On the Effective Date, all class 4 interests will be deemed cancelled without the need for either the Debtors or the class 4 interest holders to take any further actions. Interest holders will not receive any distribution or retain any property under the Plan on account of their Interests. As soon as possible after holders of class 2 allowed claims have been paid in accordance with the terms of the Plan, the corporations of the Debtors will be dissolved, and the Joint Liquidating Trust shall take such steps as are necessary to effectuate such dissolution. |

**D.   Means of Effectuating the Plan and Implementation of the Plan**

**1.   Funding for the Plan**

All allowed secured claims, if any, all allowed administrative claims, all allowed priority tax claims, and all allowed priority (non-tax) claims will be paid in full out of the Debtors' Funds on the later of the Effective Date and the date such claims are allowed by the Bankruptcy Court. The

Debtors' Funds remaining after all of the foregoing allowed claims have been paid in full and all other payments authorized by the Plan are made (including the fees of the Disbursing Agent and professional fees and expenses incurred after the Effective Date) will be distributed to holders of class 2 allowed claims on a pro rata basis.

### 2.   Post-confirmation Management

#### a)   Creation of the Joint Liquidating Trust.

On the Effective Date, the Plan Proponents shall create the Joint Liquidating Trust for the benefit of holders of allowed claims pursuant to the Plan, and the Joint Liquidating Trust Agreement shall be executed by the parties to the Joint Liquidating Trust Agreement.   The Joint Liquidating Trust shall be a creditors' liquidating trust for all purposes, including Treasury Regulations Section 301.7701-4(d).   The Joint Liquidating Trust will be organized for the purpose of liquidating the property, claims, rights and causes of action of both the Debtors and their Estates with no objective to continue or engage in the conduct of a trade or business.   As more fully set forth below, and except as set forth below, on the Effective Date, the Debtors and their estates shall be deemed to transfer all of their remaining property, claims, rights and causes of action to the Joint Liquidating Trust.   The Joint Liquidating Trust shall receive, liquidate and distribute the property,

claims, rights and causes of action of the Debtors and their estates in accordance with the Plan and the Joint Liquidating Trust Agreement as promptly as is reasonably practicable, in an expeditious but orderly manner. The Joint Liquidating Trust is not a successor of the Debtors for purposes of incurring their liabilities. To the extent there are any inconsistencies between the Plan and the Joint Liquidating Trust, the terms of the Plan shall prevail.

b) **Appointment of the Joint Liquidating Trustees.**

On the Effective Date, some or all of the members of the Creditors' Committee shall be the Joint Liquidating Trustees that administer the Joint Liquidating Trust pursuant to the Plan and the Joint Liquidating Trust Agreement. The Joint Liquidating Trustees shall serve without any bond or compensation and the Joint Liquidating Trust shall act in accordance with the Plan and the Joint Liquidating Trust Agreement by majority rule of the Joint Liquidating Trustees. The Joint Liquidating Trustees shall perform all of the obligations of the Joint Liquidating Trustees under the Plan and the Joint Liquidating Trust Agreement. The Joint Liquidating Trustees shall be the authorized representatives of the Debtors' estates for the purposes of performing and consummating the Plan pursuant to the Bankruptcy Code and the Confirmation Order.

Each Joint Liquidating Trustee shall serve for the duration of the Joint Liquidating Trust, subject to earlier death, resignation, incapacity or removal as provided in the Joint Liquidating Trust Agreement.

> **c)  Transfer of Property, Claims, Rights and Causes of Action to the Joint Liquidating Trust.**

On the Effective Date, other than a reserve to pay the estimated allowed professional fees and expenses incurred through the Effective Date which shall be retained by LNBRB in a trust account pending Court approval of such fees and expenses (with any remaining balance to be transferred to the Joint Liquidating Trust), all property, claims, rights, and causes of action of the Debtors' estates shall be transferred to and vested in the Joint Liquidating Trust free and clear of all liens, claims, encumbrances and other interests. All property, claims, rights, and causes of action received or held by the Joint Liquidating Trust shall be held in trust for the benefit of holders of allowed claims, subject to the provisions of the Plan and the Joint Liquidating Trust Agreement. The Debtors and their estates shall retain no interest in the property, claims, rights, and causes of action transferred to the Joint Liquidating Trust.

### d)   Sale or Other Disposition of Property.

After the Effective Date, the Joint Liquidating Trust may use, acquire, sell or otherwise dispose of the property it acquires in accordance with the Plan and the Joint Liquidating Trust Agreement without supervision of, or approval by, the Bankruptcy Court or the United States Trustee and free of any restrictions in the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure or Local Bankruptcy Rules (the "Bankruptcy Rules").

### e)   Investigation and Prosecution of Claims.

The Joint Liquidating Trust shall investigate all claims, rights and causes of action of the Debtors and their estates and determine which, if any, should be prosecuted in its sole discretion in accordance with the Plan and the Joint Liquidating Trust Agreement. All claims, rights and causes of action of the Debtors and their estates are preserved by the Plan, and the Joint Liquidating Trust shall have full power and authority to settle, adjust, retain, enforce or abandon any claim, right or cause of action as the representative of the Debtors' estates under section 1123(b) of the Bankruptcy Code or otherwise in accordance with the Plan and the Joint Liquidating Trust Agreement without supervision of, or approval by, the Bankruptcy Court or the United States Trustee and free of any restriction of the Bankruptcy Code or the Bankruptcy Rules, except that the

compromise of any single claim, right or cause of action that is $100,000 or more shall, until the Debtors' bankruptcy cases are closed, be subject to the approval of the Bankruptcy Court after notice and opportunity for hearing have been provided to the entities that have requested special notice.

### f)   **Bankruptcy Powers**.

The Joint Liquidating Trust shall have all of the rights, claims, powers, objections, counterclaims, defenses, setoffs and actions of the Debtors and their estates under sections 363, 365 and 501 to 558, inclusive, of the Bankruptcy Code.   After the Effective Date, all claims, rights and causes of action of the Debtors and their estates shall be filed and prosecuted in the name of the Joint Liquidating Trust.   The merger, consolidation, combination, winding-up, liquidation, closing or dissolution of the Debtors or their estates contemplated by the Plan shall not: (a) create any claim, including any claim, right or cause of action, or any counterclaim, defense or objection that did not exist prior to such merger, consolidation, combination, winding-up, liquidation, closing or dissolution;   or (b) eliminate any claim, including any claim, right or cause of action, or any counterclaim, defense or objection that existed prior to such merger, consolidation, combination, winding-up, liquidation, closing or dissolution.

**g) Employment of Officers, Employees and Professionals.**

On and after the Effective Date, the Joint Liquidating Trust shall employ and compensate such officers, employees, professionals, agents and representatives, including disbursing agents, as the Joint Liquidating Trust determines is necessary or appropriate to implement all of the provisions of the Plan (including the dissolution of the corporation) and the Joint Liquidating Trust Agreement without any supervision of, or approval by, the Bankruptcy Court or the United States Trustee.

**h) Review of and Objections to Expenses, Claims and Interests.**

On and after the Effective Date, the Joint Liquidating Trust shall be the sole representative of the Estates entitled to review and, where necessary or appropriate, object to administrative expenses, claims and interests, which shall thereafter be resolved in accordance with the Bankruptcy Code and the Bankruptcy Rules. For good cause shown, after notice and a hearing, other parties in interest may be authorized by the Bankruptcy Court to object to administrative expenses, claims and interests. Unless otherwise ordered by the Bankruptcy Court, objections to claims and administrative expenses shall be filed and served within 90 days after the Effective Date.

20

1                 **i)**   **Creation of Reserves, Investment of Cash,**

2                 **and Distribution of Cash.**

3     After the Effective Date, the Joint Liquidating Trust

4 shall: (i) pay or provide for all expenses of the Joint

5 Liquidating Trust from property in the Joint Liquidating Trust,

6 (ii) establish and maintain a reserve for expenses of the Joint

7 Liquidating Trust, (iii) establish and maintain a reserve for

8 disputed claims, (iv) establish and maintain a reserve for

9 unclaimed distributions, (v) establish any other reserves or

10 accounts it deems necessary or appropriate, and (vi) make

11 distributions of cash to the holders of allowed claims from the

12 Joint Liquidating Trust in accordance with the Plan and the

13 Joint Liquidating Trust Agreement. The procedures that govern

14 the reserves and distributions by the Joint Liquidating Trust

15 are set forth in the Joint Liquidating Trust Agreement. All

16 cash held by the Joint Liquidating Trust shall be invested only

17 in investments permitted under the Joint Liquidating Trust

18 Agreement.

19              **j)**   **Non-transferability of Trust Interests.**

20     The interests of the holders of allowed administrative

21 expenses and allowed claims in the Joint Liquidating Trust will

22 not be evidenced by any certificate or other instrument or

23 document. The interests in the Joint Liquidating Trust are non-

24 transferable and non-assignable other than to successors in

25

interest, or by will, the laws of descent and distribution, or by operation of law.

### k) No Action Against the Debtors or Joint Liquidating Trust Without Bankruptcy Court Approval.

On and after the Effective Date, no action or proceeding may be commenced or continued by any entity, other than the Joint Liquidating Trust, in any court or other tribunal, other than the Bankruptcy Court, against the Debtors, the Joint Liquidating Trust, the Joint Liquidating Trustees, or any of their directors, officers, shareholders, employees, professionals, agents or representatives, without the prior approval of the Bankruptcy Court in a final order. On and after the Effective Date, no act to collect or recover from, or offset against, or to create, perfect or enforce any right, claim, interest or remedy by any entity, other than the Joint Liquidating Trust, against the Debtors, the Joint Liquidating Trust, the Joint Liquidating Trustees or any of their officers, employees, professionals, agents or representatives, may be taken without the prior approval of the Bankruptcy Court in a final order. This provision of the Plan does not require that a defendant in a proceeding filed by the Joint Liquidating Trust obtain the approval of the Bankruptcy Court to assert any defense or setoff in such proceeding.

### 1)    Termination of Joint Liquidating Trust.

The Joint Liquidating Trust shall be irrevocable. The Joint Liquidating Trust shall terminate when the Joint Liquidating Trustees have performed all of their duties under the Plan and the Joint Liquidating Trust Agreement, including the liquidation of all of the property, claims, rights and causes of action of the Debtors and their estates, which date shall not be more than five (5) years from and after the Effective Date; provided, however, that, if in the reasonable determination of the Joint Liquidating Trustees, in light of existing facts and circumstances, the liquidation of the property, claims, rights and causes of action in the Joint Liquidating Trust and the distribution of all cash will not be completed within that time, then, not more than ninety (90) days prior to that date, the Joint Liquidating Trustees may amend the Joint Liquidating Trust Agreement to provide that the Joint Liquidating Trust shall extend for an additional period of up to one (1) year. Prior to the expiration of such one (1) year period, the Joint Liquidating Trustees may seek and, for cause shown, obtain an order from the Bankruptcy Court extending the Joint Liquidating Trust for any additional time the Bankruptcy Court deems necessary or appropriate, after notice and opportunity for hearing have been provided to the entities that have requested special notice.

23

m)    **Reports By Joint Liquidating Trust.**

The fiscal year of the Joint Liquidating Trust shall end on December 31 of each year.    In accordance with the Plan and the Joint Liquidating Trust Agreement, in conjunction with any interim or final distributions, but in any event, at least once a year, the Joint Liquidating Trust shall serve the following unaudited annual financial statements prepared on a liquidation basis in accordance with generally accepted accounting principles and the following unaudited written reports and accounts on the holders of all interests in the Joint Liquidating Trust and entities that have requested special notice: (a) financial statements showing the assets and liabilities of the Joint Liquidating Trust, including the expense reserve, the reserve for unclaimed distributions and the reserve for disputed claims at the end of the period, (b) financial statements showing the receipts and disbursements of the Joint Liquidating Trust, including the expense reserve, the reserve for unclaimed distributions and the reserve for disputed claims, during the period, (c) a brief written report from the Joint Liquidating Trust about the disposition of any remaining property, claims, rights and causes of action of the Joint Liquidating Trust and distributions remaining, (d) a written report showing the number and amount of trust interests, disputed administrative expenses and disputed claims and changes

24

1  during the period, and (e) any other written reports the Joint

2  Liquidating Trustees elect to include.    Until the Debtors'

3  bankruptcy cases are closed through the entry of a final decree

4  by the Court, a copy of the financial statements and reports

5  shall be filed with the Bankruptcy Court and the United States

6  Trustee when they are served.   The Joint Liquidating Trust shall

7  serve the United States Trustee with any and all documents that

8  it files with the Bankruptcy Court after the confirmation of the

9  Plan.    In addition, the Joint Liquidating Trust is responsible

10  for the timely payment of fees incurred pursuant to 28 U.S.C. §

11  1930(a)(6); and in calculating such fees, the Joint Liquidating

12  Trust shall file with the Bankruptcy Court and serve on the

13  United States Trustee a quarterly financial report regarding all

14  income and disbursements, including all plan payments, for each

15  quarter (or portion thereof) the bankruptcy cases remain open.

16  The Joint Liquidating Trust shall not be required to file any

17  reports with the Securities and Exchange Commission.   The Joint

18  Liquidating Trust shall prepare and distribute any other reports

19  or other information that may be required by the Bankruptcy

20  Court or the Bankruptcy Rules or that the Joint Liquidating

21  Trustees determine is necessary or appropriate.

**n)  No  Recourse  Against  Joint  Liquidating
Trustees.**

No  recourse  shall  ever  be  had,  directly  or  indirectly,
against  the  Joint  Liquidating  Trustees  or  any  of  the  officers,
employees,  professionals,  agents  or  representatives  of  the  Joint
Liquidating  Trust,  whether  by  legal,  equitable  or  other
proceedings,  by  virtue  of  any  law,  statute,  regulation  or
otherwise,  or  by  virtue  of  any  indebtedness  of  the  Debtors,
their  estates  or  the  Joint  Liquidating  Trust,  it  being  expressly
understood  and  agreed  that  all  liabilities  of  the  Joint
Liquidating  Trust  shall  be  enforceable  only  against  and  be
satisfied  only  out  of  the  property,  claims,  rights  and  causes  of
action  in  the  Joint  Liquidating  Trust  or  shall  be  evidence  only
of  a  right  to  payment  out  of  such  assets  in  the  Joint
Liquidating  Trust,  as  the  case  may  be.

**3.  Managing Director**

On  the  Effective  Date,  the  Joint  Liquidating  Trust  shall
employ  Timothy  J.  Yoo,  or  an  alternative,  as  its  Managing
Director  to  perform  all  services,  acts,  or  things  necessary  or
advisable  to  manage  and  conduct  the  business  of  the  Joint
Liquidating  Trust,  subject  to  the  supervision  of  the  Joint
Liquidating  Trustees.  As  compensation,  the  Managing  Director
will  receive  a  fee  equal  to  2.0%  of  all  funds  distributed  by  the
Liquidating  Trust  plus  reimbursement  of  all  actual  out-of-pocket

costs incurred by the Managing Director.   Mr. Yoo is a well respected panel trustee for the Central District of California. If the Plan Proponents elect to name a different Managing Director or if Mr. Yoo declines the engagement, the Plan Proponents will modify the terms of the Plan to name an alternative Managing Director prior to the Effective Date.

### 4.   Disbursing Agent.

The Joint Liquidating Trust through the Managing Director shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.

### 5.   Exculpations and Releases.

To the maximum extent permitted by law, none of the Debtors, the Joint Liquidating Trustees, the Estates, the Creditors' Committee, the Managing Director nor any of their employees, officers, directors, shareholders, agents, members, representatives, or the professionals employed or retained by any of them, whether or not by Bankruptcy Court order (each, an "Indemnified Person"), shall have or incur liability to any person or entity for an act taken or omission made in good faith in connection with or related to the formulation of the Plan, the Disclosure Statement, or a contract, instrument, release, or other agreement or document created in connection therewith, the solicitation of acceptances for or confirmation of the Plan, or the consummation and implementation of the Plan and the

transactions contemplated therein.   Each Indemnified Person shall in all respects be entitled to reasonably rely on the advice of counsel with respect to its duties and responsibilities under the Plan.

The Debtors, the Creditors' Committee and the Estates will be deemed to forever release, waive and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action and liabilities whatsoever in connection with or related to the Debtors and the Estates, or the Plan (other than the rights of the Debtors, the Creditors' Committee or Joint Liquidating Trustees to enforce the Plan and the contracts, instruments, releases, indentures, and other agreements or documents delivered thereunder) whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforseen, then existing or thereafter a rising, in law, equity or otherwise that are based in whole or part on any act, omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Estates, the Creditors' Committee or the Plan, and that may be asserted by or on behalf of the Debtors or their Estates, the Creditors' Committee or the Joint Liquidating Trustees against the Debtors' present directors, officers, shareholders, employees, agents and professionals as of the Petition Date.

## 6.    Injunctions.

The Confirmation Order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

Except as provided in the Plan or the Confirmation Order, as of the Effective Date, all entities that have held, currently hold or may hold a claim or other debt or liability that is discharged or an interest or other right of an equity security holder that is terminated pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against the Debtors, the Estates, the Creditors' Committee, the Joint Liquidating Trust or their property on account of any such discharged claims, debts or liabilities or terminated interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtors; and (v) commencing or continuing any action in any manner, in any place that does

1 not comply with or is inconsistent with the provisions of the

2 Plan.

3     By accepting distribution pursuant to the Plan, each holder

4 of an Allowed Claim or Allowed Interest receiving distributions

5 pursuant to the Plan will be deemed to have specifically

6 consented to the injunctions set forth in this Section.

7     **E.   Other Provisions of the Plan.**

8         **1.   Executory Contracts and Unexpired Leases.**

9             **a)   Assumptions.**

10    The Debtors will not assume any of their unexpired leases

11 or executory contracts under the Plan.

12

13            **b)   Rejections.**

14    On the Effective Date, all unexpired leases and executory

15 contracts to which the Debtors are a party and which were not

16 previously assumed and assigned or rejected shall be deemed

17 rejected, and the Confirmation Order shall also constitute an

18 order approving such rejection.  If you believe you are a party

19 to an unexpired lease or executory contract to be rejected under

20 the Plan and you object to the rejection of such unexpired lease

21 or executory contract, you must file and serve your objection to

22 the Plan within the deadline for objection to the confirmation

23 of the Plan.  **THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON**

24 **A CLAIM ARISING FROM THE REJECTION OF AN UNEXPIRED LEASE OR**

25 **EXECUTORY CONTRACT WHICH IS REJECTED ON THE EFFECTIVE DATE WILL**

BE TEN (10) DAYS AFTER DATE OF ENTRY OF THE CONFIRMATION ORDER.
Any claim based on the rejection of an unexpired lease or
executory contract will be barred if the proof of claim is not
timely filed, unless the Court orders otherwise.

   **2. Changes in Rates Subject to Regulatory Commission**
    **Approval.**

  The Debtors are not subject to governmental regulatory
commission approval of its rates.

   **3. Retention of Jurisdiction.**

  After confirmation of the Plan and occurrence of the
Effective Date, in addition to jurisdiction which exists in any
other court, the Bankruptcy Court will retain such jurisdiction
as is legally permissible including for the following purposes:

   a. To resolve any and all disputes regarding the
operation and interpretation of the Plan and the Confirmation
Order;

   b. To resolve any and all disputes regarding the
operation and interpretation of the Joint Liquidating Trust;

   c. To determine the allowability, classification, or
priority of claims and interests upon objection by the Debtors,
the Creditors' Committee, the Joint Liquidating Trust, or by
other parties in interest with standing to bring such objection
or proceeding;

d.    To determine the extent, validity and priority of any lien asserted against property of the Debtor, property of the Debtors' Estates, or the Joint Liquidating Trust.

e.    To construe and take any action to enforce the Plan, the Confirmation Order, and any other order of the Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the Confirmation Order, and the Joint Liquidating Trust and all matters referred to in the Plan, the Confirmation Order, and the Joint Liquidating Trust and to determine all matters that may be pending before the Court in these cases on or before the Effective Date with respect to any person or entity related thereto;

f.    To determine (to the extent necessary) any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the Effective Date;

g.    To determine any request for payment of administrative expenses;

h.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

1        i.    To determine all applications, motions, adversary

2   proceedings, contested matters, and any other litigated matters

3   instituted during the pendency of these cases whether before,

4   on, or after the Effective Date;

5        j.    To determine such other matters and for such

6   other purposes as may be provided in the Confirmation Order.

7        k.    To modify the Plan under Section 1127 of the

8   Bankruptcy Code in order to remedy any apparent defect or

9   omission in the Plan or to reconcile any inconsistency in the

10  Plan so as to carry out its intent and purpose;

11       l.    Except as otherwise provided in the Plan, the

12  Confirmation Order, or the Joint Liquidating Trust, to issue

13  injunctions to take such other actions or make such other orders

14  as may be necessary or appropriate to restrain interference with

15  the Plan or the Confirmation Order, or the execution or

16  implementation by any person or entity of the Plan or the

17  Confirmation Order;

18       m.    To issue such orders in aid of consummation of

19  the Plan, the Confirmation Order, or the Joint Liquidating

20  Trust, including approval of distributions under the Plan,

21  notwithstanding any otherwise applicable nonbankruptcy law, with

22  respect to any person or entity, to the fullest extent

23  authorized by the Bankruptcy Code or Bankruptcy Rules; and

24

25


33

1        n.   To enter a final decree closing these Chapter 11

2   cases.

3              **III. EFFECT OF CONFIRMATION OF THIS PLAN**

4        **A.   No Discharge.**

5        The Debtors will not receive any discharge in these Cases

6   because the Debtors do not meet the test for receiving a

7   discharge as specified under Section 1141(d)(3) of the

8   Bankruptcy Code.

9        **B.   Vesting of Property in the Joint Liquidating Trust.**

10       Except as provided elsewhere in the Plan or the

11  Confirmation Order, the confirmation of the Plan will result in

12  all property, claims, rights and causes of action of the Debtors

13  and their estates being deemed distributed to creditors and then

14  vested in the Joint Liquidating Trust as a creditors'

15  liquidating trust.

16       **C.   Modification of the Plan.**

17       The Plan Proponents may modify the Plan at any time before

18  confirmation.  However, the Bankruptcy Court may require a new

19  disclosure statement and/or re-voting on the Plan if the Plan

20  Proponents modify the Plan before confirmation.   The Plan

21  Proponents may also seek to modify the Plan at any time after

22  confirmation of the Plan so long as (1) the Plan has not been

23  substantially consummated <u>and</u> (2) the Court authorizes the

24  proposed modifications after notice and a hearing.

25

                                  34

### D.   Post-Confirmation Status Report.

Within 120 days of the entry of the order confirming the Plan, unless a final decree closing the Debtors' Chapter 11 cases is first entered, the Joint Liquidating Trust shall file a status report with the Bankruptcy Court explaining what progress has been made toward consummation of the confirmed Plan. The status report shall be served on the United States Trustee, the Debtors and their counsel, the Creditors' Committee and its counsel, and those parties who have requested special notice after the entry of the Confirmation Order. Further status reports shall be filed every 120 days and served on the same entities until a final decree is entered closing the Debtors' Chapter 11 cases, unless otherwise ordered by the Bankruptcy Court.

### E.   Post-Confirmation Conversion/Dismissal

A creditor or any other party in interest may bring a motion to convert or dismiss these cases under Section 1112(b) of the Bankruptcy Code after the Plan is confirmed if there is a default in performing the Plan. If the Bankruptcy Court orders these cases converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estates, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estates, and the automatic stay will be reimposed upon the revested property, but only to the

35

1  extent that relief from stay was not previously authorized by

2  the Bankruptcy Court during these cases.

3      The order confirming the Plan may also be revoked under

4  very limited circumstances.  The Court may revoke the

5  Confirmation Order if it was procured by fraud and if a party in

6  interest brings an adversary proceeding to revoke confirmation

7  within 180 days after the entry of the Confirmation Order.

8  **F.    Payment of United States Trustee Fees**

9      The Debtors shall be responsible for the timely payment of

10  fees incurred pursuant to 28 U.S.C. § 1930(a)(6) for all pre-

11

12  confirmation quarters.  After confirmation, the Joint

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

///

Liquidating Trust shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6).

### G.   Final Decree.

Once these Estates have been fully administered as referred to in Bankruptcy Rule 3022, the Plan Proponents, the Joint Liquidating Trust or any other party as the Bankruptcy Court shall designate in the Confirmation Order, shall file a motion with the Bankruptcy Court to obtain a final decree to close these cases.

Dated:   April 25, 2003

CHORUS LINE CORPORATION, a
Delaware corporation, and
CALIFORNIA FASHION INDUSTRIES,
INC., a California corporation

By: _____
RON BENDER
DAVID B. GOLUBCHIK
LEVENE, NEALE, BENDER,
RANKIN & BRILL L.L.P.
Attorneys for Chapter 11
Debtors and Debtors in
Possession

DATED:   April 24, 2003

EZRA | BRUTZKUS | GUBNER LLP

By: _____
STEVEN T. GUBNER
Attorneys for the Official
Committee of Unsecured
Creditors

**THE CHORUS LINE CORPORATION AND CALIFORNIA FASHION
INDUSTRIES, INC., JOINT LIQUIDATING TRUST AGREEMENT**

**April __, 2003**

EXHIBIT __*A*__

## THE JOINT LIQUIDATING TRUST AGREEMENT

THIS JOINT LIQUIDATING TRUST AGREEMENT (the "Agreement") is made this ___ day April, 2003 (the "Effective Date") by and among Chorus Line Corporation, a Delaware corporation ("CLC"), and California Fashion Industries, Inc., a California corporation ("CFI" and collectively with CLC, the "Debtors"), and [insert name of Trustees], not in their individual capacities, but solely as trustees hereunder (the "Trustee").

### RECITALS:

A.     On November 13, 2000, certain petitioning creditors filed an involuntary petition against CLC under Chapter 7 of Title 11, United States Code, 11 U.S.C. § 101, et seq. (the "Bankruptcy Code"). The involuntary petition was assigned Bankruptcy Case Number LA 00-41578-ER.  On December 14, 2000, CLC and CFI filed voluntary petitions under Chapter 11 of the Bankruptcy Code.  Pursuant to orders entered by this Court on or about December 22, 2000, CLC's Chapter 11 case was dismissed and CLC's Chapter 7 case was converted to one under Chapter 11 of the Bankruptcy Code, and CFI's and CLC's cases were ordered jointly administered.

B.     On or around April __, 2003, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") filed the Debtors' and the Creditors' Committee's Joint Plan of Reorganization (the "Plan").

C.     The Plan provides that a liquidating trust (the "Liquidating Trust") be created for the benefit of the holders of allowed claims.

D.     The Debtors and the Trustees desire to create and fund the Liquidating Trust on the Effective Date, as contemplated by the Plan, pursuant to this Agreement.

### AGREEMENTS:

NOW THEREFORE, for and in consideration of the mutual promises and agreements contained herein and in the Plan, the receipt and sufficiency of which are hereby expressly acknowledged, the Debtors and the Trustees, intending to be legally bound, hereby agree as follows:

I.     Definitions:

A.     Terms Defined Above.  As used in this Agreement, each of the terms "Debtor," "Agreement," "Bankruptcy Court," "Plan," "Plan Confirmation Order," and "Trustees" shall have the meanings set forth above.

B.     Additional Defined Terms.  As used herein, the following terms shall have the meanings set forth below, unless the context otherwise requires:

1

34

1.    "Beneficial Interest" shall mean a participating beneficial interest in the Liquidating Trust issued pursuant to the Plan and this Agreement to the holder of an allowed claim under the Plan.

2.    "Holders" shall mean the owners of a Beneficial Interest.

3.    "Internal Revenue Code" shall mean the Internal Revenue Code of 1986, as amended from time to time.

4.    "Liquidating Trust" shall mean the Liquidating Trust formed pursuant to the Plan and this Agreement.

5.    "Liquidating Trust Assets" shall mean all of the tangible and intangible real and personal property transferred to and vested in the Liquidating Trust pursuant to the Plan and this Agreement.

6.    "Net Sale Proceeds" shall mean the net cash proceeds realized by the Liquidating Trust in connection with the sale or other disposition of any of the Trust Estate, after deduction of any and all brokerage commissions and other normal and customary closing costs and expenses.

7.    "Registrar and Transfer Agent" shall mean the Trustees or any agent or designee appointed by the Trustees.

8.    "Trust Estate" shall mean any or all of the Liquidating Trust Assets.

9.    "Trust Register" shall mean the books kept by the Registrar and Transfer Agent for the registration of Beneficial Interests and in which shall be recorded the names and addresses of the Holders and the Classes and amounts of their Allowed Claims.

10.    "Trustees" shall mean [insert names of ___ of the Debtors' creditors], and any duly appointed successors, not in their individual capacities, but solely as trustees hereunder.

C.    Terms Defined in Plan.  Terms used in this Agreement without definition shall have the meanings assigned to them in the Plan.  The rules of construction applicable to the Plan shall also apply to this Agreement.  The Plan is hereby incorporated into this Agreement by this reference.

II.    Declaration of Trust.

A.    Creation of Liquidating Trust.  Pursuant to the Plan and the Plan Confirmation Order, and as of the Effective Date of the Plan, the Debtors and the Trustees hereby irrevocably create the Liquidating trust for the benefit of the Debtors' creditors.  The name of the Liquidating Trust shall be "The Liquidating Trust."  The Liquidating Trust shall terminate only in accordance with the provisions of the Plan and this Agreement.

B.    Property in the Liquidating Trust.  The Liquidating Trust shall hold the legal title to the Trust Estate and shall hold such property in trust to be administered and disposed of by it

2

pursuant to the terms of the Plan and this Agreement for the benefit of the Holders. The Trustees are authorized to make disbursements and payments from the Liquidating Trust in accordance with the Plan and this Agreement.

   C.    Purpose of Liquidating Trust. The Liquidating Trust is organized for the purposes of collecting, holding and liquidating the Trust Estate, making payments to the Holders, and administering, compromising, settling, withdrawing, objecting to, or litigating objections to disputed claims, and prosecuting Causes of Action (as defined in the Plan) with no objective to engage in the conduct of a trade or business except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidating Trust.

   D.    Number of Trustees. There shall be [up to three] Trustees. The resignation, removal, incapacity or death of any or all of the Trustees shall not operate to terminate the Liquidating Trust.

III.    Beneficial Interests.

   A.    Non-Certificated and Non-Transferable.    Beneficial Interests will not be evidenced by any certificate or other instrument or document.    Beneficial Interests in the Liquidating Trust are non-transferable and non-assignable other than to successors in interest, or by will, the laws of descent and distribution, or by operation of law. Beneficial Interests shall be divided into classes corresponding to the Classes in the Plan which provide for the distributions of cash from the Liquidating Trust to the Holders. Pursuant to the Plan, upon the Effective Date of the Plan, each entity who is the holder of an allowed claim shall automatically become the owner of a Beneficial Interest corresponding to the class of allowed claim held by such entity.

   B.    Absolute Owners. The Liquidating Trust and the Trustees may deem and treat each Holder as the absolute owner of the underlying Beneficial Interest for the purpose of receiving distributions and payment thereon or on account thereof and for all other purposes whatsoever.

   C.    No Required Meetings or Votes. Subject to Section X(A) below, the Trustees are not required to call or conduct any meeting of all or any of the Holders. Subject to Section X(A) below, the Trustees are not required to solicit, obtain the vote or consent of, or give any notice to, any of the Holders with respect to any action authorized or permitted under the Plan, this Agreement or any order of the Bankruptcy Court. The Trustees may, however, discuss any proposed action with any one or more of the Holders as the Trustees, in their sole and absolute discretion, deem appropriate.

   D.    Trustees as Holders. The Trustees may be Holders.

IV.    Delivery and Acceptance of Trust Estate.

   A.    Conveyance by Debtors. Upon the Effective Date of the Plan, the Debtors shall be deemed to have transferred and assigned all of the Liquidating Trust Funds and Causes of Action to the Holders, who in turn shall be deemed to have transferred and assigned all such Liquidating Trust Funds and Causes of Action to the Trustees on behalf of the Liquidating trust. The Liquidating Trust or the Trustees on behalf of the Liquidating Trust shall become the owner

3

and holder of all privileges, including the attorney-client privilege owned or held by the Debtor, whether before or after the Petition Date. At any time and from time to time after the date hereof at the Trustees' request and without further consideration, the Debtors shall execute and deliver such instruments of sale, transfer, conveyance, assignment and confirmation, and will cooperate and take such other actions as the Trustees may deem reasonably necessary or desirable in order to more effectively transfer, convey and assign all rights, title and interests in and to the Trust Estate to the Liquidating Trust and all privileges to the Liquidating Trust or the Trustees on behalf of the Liquidating Trust.

B.    Acceptance of Conveyance. The Trustees are hereby directed to, and the Trustees agree that they will:

1.    accept delivery of the Trust Estate on behalf of the Liquidating Trust;

2.    accept from the Debtors all bills of sale, deeds, assumptions and assignments, and all other instruments of conveyance required to be delivered by the Debtors with respect to the Trust Estate transferred to the Liquidating Trust or the Trustees on behalf of the Liquidating Trust pursuant to or in connection with the Plan, the Plan Confirmation Order or this Agreement; and

3.    take such other action as may be required of the Liquidating Trust hereunder, including the receipt and acceptance as part of the Trust Estate of any property, instruments and choses in action, which the Trustees may receive in connection with or in consideration of the Trust Estate.

C.    No Interest Retained by Debtors. The Debtors shall retain no interest in the Trust Estate or the Liquidating Trust.

V.    Administration of Trust Estate.

A.    Reserves. As soon as funds becomes available in the Trust Estate, the Trustees shall establish and maintain sufficient reserves for expenses of the Liquidating Trust, unclaimed distributions, and disputed claims, as the Trustees deem necessary or otherwise ordered by the Bankruptcy Court.

B.    Powers of the Trustees.

1.    Administrative Powers. During the Trustees' administration of the Liquidating Trust, and subject to the Plan, the Plan Confirmation Order and this Agreement, the Liquidating Trust and the Trustees and the Managing Director on behalf of the Liquidating Trust may exercise the power:

i.    to receive and hold all the assets of the Trust Estate and to have exclusive possession and control thereof for the purposes set forth in Section II(C) hereof;

ii.    to enter into, perform and exercise rights under contracts binding upon the Liquidating Trust (but not upon the Trustees in their respective individual or corporate capacities) which are reasonably incident to the administration of the Liquidating Trust and

4

42

which the Trustees, in the exercise of their judgment, believe to be in the best interests of the Liquidating Trust;

iii.    to establish and maintain accounts at banks and other financial institutions, in a clearly specified fiduciary capacity, into which the reserves or other Cash and property of the Liquidating Trust may be deposited, and draw checks or make withdrawals from such accounts, and to pay or distribute such amounts of the Trust Estate as permitted or required under the Plan or this Agreement;

iv.    to employ and compensate attorneys (in addition to those attorneys employed and compensated pursuant to Section V(B)(2) hereof), accountants, appraisers, property managers, disbursing agents, brokers, realtors, expert witnesses, insurance adjusters, or any successor or other persons whose services may be necessary or advisable in the judgment of the Trustees in accordance with the terms of the Plan, and to pay from the Trust Estate reasonable compensation to such attorneys, accountants, appraisers, property managers, disbursing agents, brokers, realtors, expert witnesses, insurance adjuster or any successor, or other persons (including, when necessary or appropriate, contingent fee or commission based arrangements) in accordance with the terms of the Plan;

v.    to hold, administer, market, and lease (for the purposes of holding for sale) the assets in the Trust Estate;

vi.    to sell or otherwise dispose of the assets in the Trust Estate in accordance with the Plan;

vii.    to collect and receive any accounts receivable, income, proceeds of sale, and distributions derived from or relating to the Trust Estate and to distribute the same to the Holders in accordance with the terms of the Plan and this Agreement;

viii.    to pay any and all necessary expenses attributable or relating to the management, maintenance, administration, preservation or liquidation of the Trust Estate;

ix.    to investigate, file, compromise, settle, withdraw or litigate in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) or in any other appropriate court or tribunal, litigation claims, objections to disputed administrative expenses and disputed claims, and to exercise any and all rights and perform any and all obligations of the Liquidating Trust, under the Plan, this Agreement or otherwise;

x.    to sue or be sued in connection with any matter arising from or related to the Plan or this Agreement that affects in any way the rights or obligations of the Liquidating Trust, the Trustees or the Holders;

xi.    to represent the interests of the Holders with respect to any matters relating to the Plan, this Agreement or the Liquidating Trust affecting the rights of the Holders solely in their capacity as Holders;

xii.    to prosecute, exercise or enforce all litigation claims (including the Causes of Action) and the rights, claims, powers, objections and actions of the Debtors and its

5

estate under sections 363, 365 and 501 to 558, inclusive, of the Bankruptcy Code whether or not such litigation was commenced by the Debtors prior to the Effective Date of the Plan;

        xiii.    to act as representatives of the Estate under section 1123(b) of the Bankruptcy Code or otherwise;

        xiv.    to wind-up, liquidate, dissolve and terminate the Debtors and to pay all expenses related thereto; and

        xv.    to do any and all other things, not in violation of any other terms of the Plan or this Agreement, which, in the judgment of the Trustees, are necessary or appropriate to carry out the terms or purposes of the Plan, this Agreement, the Liquidating Trust or for the proper liquidation, management, investment and distribution of the assets of the Trust Estate in accordance with the provisions of the Plan and this Agreement.

        2.    <u>Retention of Debtors' and Creditors' Committee's Attorneys and Accountants</u>.  The Liquidating Trust is authorized to employ and compensate the attorneys, accountants and other professionals employed by the Debtors or the Creditors' Committee prior to the Effective Date of the Plan without any further order of the Court.  Moreover, any compensation paid to any such professionals for services performed after the Effective Date shall not be subject to the approval of the Court.  Any actual or potential conflict of interest which might otherwise preclude such employment is waived and the Debtors and Trustees acknowledge that they have received full disclosure of such conflict, and hereby consent to such continued employment.  The employment by the Liquidating Trust of any other professionals and the compensation of any such other professionals shall be subject to the approval of the Court.

        3.    <u>Objections to Disputed Administrative Expenses and Disputed Claims</u>. From and after the Effective Date of the Plan, the Liquidating Trust, through the Trustees and the Managing Director, shall be the sole representative of the Debtors' Estates for the purposes of investigating, settling, compromising, objecting to, and litigating in the Bankruptcy Court or on appeal (or pursuant to a withdrawal of the reference of jurisdiction) objections to disputed claims, except as otherwise provided in the Plan, and the prosecution of the Causes of Action (whether that involves commencing such prosecution or continuing with the prosecution previously commenced by the Debtor).

        C.    <u>Limitations on Trustees; Investments</u>.

        1.    <u>No Trade or Business for Liquidating Trust</u>.  The Trustees shall carry out the purposes of the Plan, this Agreement and the Liquidating Trust and the directions contained herein and shall not at any time cause the Liquidating Trust or the Trust Estate to enter into or engage in any business (except as may be consistent with the limited purposes of the Liquidating Trust), including the purchase of any asset or property (other than such assets or property as are necessary to carry out the purposes of the Plan, this Agreement or the Liquidating Trust, on behalf of the Liquidating Trust or the Holders).  The Trustees are directed to take all actions necessary or appropriate to dispose of the Trust Estate in as prompt, efficient and orderly a fashion as possible, to make timely distributions of Cash out of the Trust Estate, and to otherwise not unduly prolong the duration of the Liquidating Trust.

2.    Investments. The Trustees shall invest any funds held at any time as part of the Trust Estate, and funds in any reserves or escrows established pursuant to the terms of the Plan or this Agreement, only in investments authorized under section 345 of the Bankruptcy Code ("Permitted Investments"). The Trustees shall be restricted to the collection and holding of such funds and to the payment and distribution thereof for the purposes set forth in the Plan and this Agreement and to the conservation and protection of the Trust Estate in accordance with the provisions of the Plan and this Agreement.

D.    Transferee Liabilities. If any liability shall be asserted against the Liquidating Trust as transferee of the Trust Estate or any other property or assets on account of any claimed liability of or through the Debtor, the Trustees may use such part of the Trust Estate as may be necessary in contesting any such claimed liability and in payment, compromise, settlement and discharge thereof on terms satisfactory to the Trustees. In no event shall the Trustees be required or obligated to use their own property, funds or assets for any such purposes.

E.    Administration of Trust. In administering the Liquidating Trust, the Trustees, subject to the express limitations contained in the Plan and this Agreement, are authorized and directed to do and perform all such acts, to execute and deliver such deeds, bills of sale, instruments of conveyance, and other documents as they may deem necessary or appropriate to carry out the purposes of the Plan, this Agreement and the Liquidating Trust. The Trustees shall not commingle any of the Trust Estate with the property of any of the Trustees or any other entity.

F.    Payment of Expenses and Other Liabilities. The Trustees shall pay from the Trust Estate all expenses, charges, liabilities and obligations of the Liquidating Trust, including such debts, liabilities, or obligations as may be payable from the Trust Estate, interest, taxes, assessments, and public charges of every kind and nature, and the costs, charges and expenses in connection with or arising out of the execution or administration of the Liquidating Trust and the Trust Estate, and such other payments and disbursements as are provided for in the Plan or this Agreement or which may be necessary or appropriate charges against the Liquidating Trust and the Trust Estate, and the Trustees, in their judgment, may, from time to time, make provision by reserve or otherwise, out of the Trust Estate, for such amount or amounts as the Trustees in their judgment may determine to be necessary or appropriate to meet or satisfy unascertained, unliquidated or contingent liabilities of the Liquidating Trust or the Trustees.

G.    Tax Requirements. The Liquidating Trust shall comply with all payment, withholding and reporting requirements imposed by any federal, state or local laws. All distributions of cash by the Liquidating Trust shall be subject to all such payment, withholding and reporting requirements. The Liquidating Trust shall report and pay any taxes that may be imposed on the Liquidating Trust, the reserve for disputed claims, the reserve for unclaimed distributions and the Liquidating Trust's expense reserve by any federal, state or local laws. As a condition to the receipt of any distributions under this Plan, the Holders may be required to provide the Liquidating Trust with information or documents required under applicable law for tax or other purposes. Any Holder to whom a notice is mailed requesting such information or documents but who fails to deliver such information or documents to the Liquidating Trust within three months after the notice is mailed shall be forever barred from thereafter receiving

7

45

any distributions from the Liquidating Trust and the amounts to which such holder is no longer entitled shall be reallocated to make other distributions required by the Plan.

H.    Liabilities of the Liquidating trust.  The Liquidating Trust shall have no liabilities whatsoever except (a) in accordance with the Plan and this Agreement and (b) the obligation to pay and reimburse the Trustees and the officers, employees, professionals, agents and representatives of the Liquidating Trust in accordance with the Plan and this Agreement. Without limiting the foregoing, the Liquidating Trust shall have no liability for any expenses of or claims against the Debtor, its Estate or any other entities except, with respect to the Liquidating Trust, for allowed administrative expenses and allowed claims in accordance with the Plan and this Agreement.

I.    Compensation of Trustees.    Each of the Trustees shall be entitled to be compensated from the Liquidating Trust for their actual, necessary and reasonable expenses they incur in the performance of their duties under the Plan and this Agreement. Each Trustee shall be entitled to engage in such other activities as each deems appropriate, provided that each Trustee shall devote such time as is necessary to fulfill all of his or her duties under the Plan and this Agreement.

VI.    Source of Payments; Distributions

A.    Payments from Trust Estate.  All payments to be made to the Holders under the Plan and this Agreement shall be made only from the assets, income and proceeds of the Trust Estate and only to the extent that the Liquidating Trust shall have received sufficient assets, income or proceeds of the Trust Estate to make such payments in accordance with the Plan and this Agreement. Each Holder shall look solely to the assets, income and proceeds of the Trust Estate, and not to the Trustees or the officers, employees, professionals, agents or representatives of the Liquidating Trust in their personal, individual or corporate capacities, or to the Debtor, for distribution to such Holder as provided in the Plan and this Agreement.

B.    Distributions Pursuant to Plan and Agreement.  The Liquidating Trust shall distribute funds in the Trust Estate in accordance with the Plan and this Agreement.

1.    Timing Of Distributions.  Except for the distribution of available cash by the Liquidating Trust that is required on or as soon as practicable after the Effective Date and the last distribution of available cash before the termination of the Liquidating Trust, the distribution dates for all distributions of available cash made by the Liquidating Trust shall be as often, in the sole discretion of the Liquidating Trustees, as there is available cash in an amount sufficient to make a distribution of available cash practicable in comparison to the costs of making a distribution. The distribution date for the final distribution of all remaining available cash by the Liquidating Trust shall be when all of the property, claims, rights and causes of action of the Liquidating Trust have been reduced to cash or abandoned and the Liquidating Trustees have performed all of their duties under the Plan and this Agreement.

2.    Managing Director and Disbursing Agent.  The Liquidating Trust shall employ and compensate a Managing Director as set forth in the Plan. The Liquidating Trust through the Managing Director shall serve as the disbursing agent for all distributions made by

the Liquidating Trust. All distributions of cash by the Liquidating Trust shall be made in lawful currency of the United States, by checks drawn on or, at the option of the Liquidating Trust, wire transfers from, one or more United States banks selected by the Liquidating Trust from the list of approved depositories issued by the United States Trustee.

3.    Checks Not Cashed. Any and all checks issued on account of allowed administrative expenses or allowed claims shall be null and void if not cashed within three (3) months of issuance. The holder of an allowed administrative expense or allowed claim may thereafter make a written request for the Liquidating Trust to issue a replacement check until six months following issuance of the first check that became null and void. Thereafter, all allowed administrative expenses and allowed claims in respect of null and void checks shall be forever barred from any distributions from the Liquidating Trust and the cash represented by the null and void checks shall be used by the Liquidating Trust to make other distributions of cash required by the Plan.

4.    Delivery Of Distributions. Unless otherwise agreed by the Liquidating Trust, each distribution of cash by the Liquidating Trust on each distribution date shall be made by first class United States mail, postage prepaid, to the holder of an allowed administrative expense or allowed claim at the latest address set forth on a request for payment of an allowed administrative expense, a proof of claim filed with the Bankruptcy Court on account of an allowed claim, the Schedules and Statements filed by the Debtor, or a written notice of change of address delivered to the Liquidating Trust after the Effective Date, or a notice delivered to the Debtors or the Liquidating Trust under Bankruptcy Rule 3001 identifying the name and address of the entity to whom an allowed administrative expense or an allowed claim has been transferred prior to the Effective Date, whichever is the most recent. The Liquidating Trust shall not be required to make any other effort to locate or ascertain any address for any distribution.

5.    Unclaimed Distributions. Any distributions of cash under the Plan that are returned as unclaimed or undeliverable shall be allocated to a reserve administered by the Liquidating Trust. The Liquidating Trust is not required to attempt delivery of subsequent distribution to an address from which a prior distribution was returned as unclaimed or undeliverable.

6.    Disputed Administrative Expenses And Disputed Claims. For purposes of making distributions under the Plan, on each distribution date the Liquidating Trust shall allocate to a reserve administered by the Liquidating Trust the amount of cash that would be distributed to the holders of disputed administrative expenses and disputed claims if they held allowed administrative expenses and allowed claims. No cash shall be distributed to the holder of any disputed administrative expense or disputed claim until the next distribution date following the date on which the disputed administrative expense or disputed claim is resolved as an allowed administrative expense or allowed claim.

7.    Amount Reserved for Disputed Claims. The Liquidating Trust shall allocate cash to the reserve for disputed claims on the basis of the face amount of each disputed administrative expense or disputed claim unless the Bankruptcy Court authorizes the Liquidating Trust to use a lower amount upon motion or stipulation after notice and opportunity for hearing to the holder of the disputed administrative expense or disputed claim and other parties in

9

47

interest. The Bankruptcy Court shall determine the amount of cash to be allocated to the reserve for disputed claims on account of any unliquidated disputed administrative expense or unliquidated disputed claim by estimation upon motion or stipulation after notice and opportunity for hearing to the holder of the disputed administrative expense or disputed claim and other parties in interest.

        8.   Payment Of Resolved Disputed Administrative Expenses And Disputed Claims.

        i.   On the distribution date following the date on which a disputed administrative expense or disputed claim is resolved as an allowed administrative expense or allowed claim, the Liquidating Trust shall make the appropriate distribution of the cash allocated to the reserve for disputed claims to the holder of the allowed administrative expense or allowed claim (or such lesser pro rata amount if resolved as an allowed administrative expense or allowed claim in an amount less than the amount used to determine the reserve). If an entity holds one or more allowed administrative expenses or allowed claims and one or more disputed administrative expenses or disputed claims, no distribution of cash shall be made to that entity by the Liquidating Trust until all disputed administrative expenses and disputed claims held by that entity have been resolved.

        ii.   If a disputed administrative expense or disputed claim is resolved as an allowed administrative expense or allowed claim in an amount that is greater than the amount for which cash was reserved in the reserve for disputed claims, the holder of the allowed administrative expense or allowed claim shall receive distributions from the Liquidating Trust in an amount equal to the amount that would have been received if the Liquidating Trust had allocated cash to the reserve for disputed claims on the basis of the amount of the allowed administrative expense or allowed claim. Any distributions of cash to which the holders of allowed administrative expenses or allowed claims would have been entitled had cash been reserved in the reserve for disputed claims on account of the full amount of the allowed administrative expenses or allowed claims shall be made up pro rata from subsequent distributions of available cash before any other distributions of available cash are made to other entities.

        iii.   Any cash allocated to the reserve for disputed claims on account of a disputed administrative expense or disputed claim that is resolved, in whole or in part, as not qualifying as an allowed administrative expense or an allowed claim shall, to the extent it does not qualify as an allowed administrative expense or allowed claim, be reallocated to make other distributions of cash required by the Plan.

    C.   Maintenance of Records. The Liquidating Trust shall establish and maintain such books and records as the Trustees deem necessary or appropriate.

    D.   Reserves. The Trustees shall establish and maintain reserves for expenses of the Liquidating Trust, disputed claims, and unclaimed distributions in accordance with the Plan and this Agreement. The Trustees may establish and maintain such other reserves, accounting entries, escrow accounts or similar items as the Trustees deem necessary or appropriate. All reserves, accounting entries, escrows and similar items and the amounts allocable to each are

10

solely for administrative convenience and the amounts allocated to each need not be segregated and may be commingled in one or more Permitted Investments as the Trustees deem necessary or appropriate.

    E.    <u>No Fractional Distributions</u>. No distributions to Holders in fractions of cents (i.e. fractions of hundredths of U.S. Dollars) shall be made by the Liquidating Trust. Any distribution to a Holder that would include a fraction of a cent shall be rounded down to the nearest whole cent. The aggregate amount of fractions of cents that are not distributed pursuant to this provision on the final distribution date shall be donated to a charitable organization designated by the Trustees.

    F.    <u>Dissolution and Termination</u>.

    1.    <u>Dissolution Event</u>. The Liquidating Trust shall be dissolved upon the first to occur of the following:

    i.    the determination by the Trustees to dissolve the Liquidating Trust upon performance and completion of all obligations and duties of the Liquidating Trust and the Trustees under the Plan and this Agreement, including, without limitation, the distribution of the proceeds of the Trust Estate to the Holders as set forth in the Plan and this Agreement; or

    ii.    the date which is three (3) years from and after the Effective Date of the Plan (the "Termination Date"), provided, however, that if, in the reasonable determination of the Trustees, in light of existing facts and circumstances, the liquidation of the Trust Estate and the distribution of the proceeds thereof will not be completed prior to the Termination Date, then not more than ninety (90) days prior to the Termination Date, the Trustees may extend the Termination Date for an additional period of up to one (1) year (the "Extension Period"), provided further, that prior to the expiration of the Extension Period, the Trustees may seek, and, for cause shown, obtain an order of the Bankruptcy Court approving and authorizing an extension of the Extension Period for such time as the Bankruptcy Court deems appropriate after notice and opportunity for hearing have been provided to the Holders, holders of disputed administrative expenses, holders of disputed claims, and any entities that filed a request for special notice with the Bankruptcy Court concerning the Case ("Special Notice Entities").

VII.    <u>Other Duties of the Trustees</u>.

    A.    <u>Management of Trust Estate</u>. With respect to the assets of the Trust Estate, the Trustees may, if sufficient funds are available, purchase and maintain in existence such insurance as the Trustees deem necessary or appropriate from time to time to protect the Liquidating Trust, the Trustees' (including the officers, employees, professionals, agents or representatives of the Liquidating trust) and the Holders' interests in the assets of the Trust Estate or from any potential claims or liabilities relating thereto or the distribution thereof.

    B.    <u>No Implied Duties</u>. The Trustees shall not manage, control, use, sell, dispose, collect or otherwise deal with the Trust Estate or otherwise take any action hereunder except as expressly provided in the Plan or this Agreement, and no implied duties or obligations whatsoever of the Trustees shall be read into this Agreement. Except as otherwise expressly

provided in the Plan or this Agreement, the Trustees shall have no duties or obligations under any laws or statutes otherwise applicable to trusts.

VIII.    Concerning the Trustees.

A.    Acceptance by Trustees.    The Trustees accept the Liquidating Trust hereby created for the benefit of the Holders and agree to act as Trustees of the Liquidating Trust pursuant to the terms of the Plan and this Agreement. The Trustees shall have and exercise the rights and powers granted in the Plan and this Agreement and shall be charged solely with the performance of the duties declared in the Plan and this Agreement on the part of the Trustees. The Trustees also agree to receive and disburse all funds actually received by them constituting part of the Trust Estate pursuant to the terms of the Plan and this Agreement.

B.    Discretionary Submission of Questions.    Subject to the provisions of the Plan and this Agreement, the Trustees, in their judgment, may, but shall not be required to, submit to the Bankruptcy Court, from time to time, after notice and opportunity for hearing have been provided to the Holders and Special Notice Entities, unless otherwise ordered by the Bankruptcy Court, any question or questions with respect to which the Trustees may desire to have explicit approval of the Bankruptcy Court for the taking of any specific action proposed to be taken by the Trustees with respect to the Liquidating Trust or the Trust Estate, or any part thereof, and the administration and distribution of the Liquidating Trust or the Trust Estate. The written authorization of the Bankruptcy Court set forth in a final order shall constitute approval by the Bankruptcy Court of the proposed action to be taken by the Trustees. All costs and expenses incurred by the Trustees in the exercise of any right, power or authority conferred by the Plan or this Agreement shall be costs and expenses of the Trust Estate.

C.    Liability of the Trustees.

1.    Limitation on Liability.    No provision of the Plan or this Agreement shall be construed to impose any liability upon the Trustees or the officers, employees, professionals, agents or representatives of the Liquidating Trust unless it shall be proven that the actions or omissions of such entity are not authorized under the Plan and this Agreement and constituted willful misconduct in the exercise of, or failure to exercise, any right or power under the Plan or this Agreement.

2.    Reliance on Certificates or Opinions.    In the absence of willful misconduct on the part of the Trustees, the Trustees may conclusively rely, as to the truth of the statements and correctness of the opinions expressed therein, upon any certificates or opinions furnished to the Trustees and conforming to the requirements of the Plan or this Agreement.

3.    Discretion of Trustees.    Except as otherwise expressly provided in the Plan or this Agreement, the Trustees, within the limitations and restrictions expressed and imposed in the Plan and this Agreement, may act freely under all or any of the rights, powers and authority conferred in the Plan or this Agreement in all matters concerning the Liquidating Trust and the Trust Estate without the necessity of obtaining the consent or permission or authorization of the Holders, the Debtor, the Bankruptcy Court, or of any official or officer; and the rights, powers and authority conferred on the Trustees by the Plan and this Agreement are conferred in

12

50

contemplation of such freedom of action within the limitations and restrictions so expressed and imposed; provided, however, that the Trustees shall not be liable for any error unless it shall be proved that the Trustees acted in a manner which constituted willful misconduct.

D.    Reliance by Trustees.

1.    Genuineness of Documents.  The Trustees and the officers, employees, professionals, agents and representatives of the Liquidating Trust may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, objection, order, judgment, decree, or other paper or document reasonably believed by them to be genuine and to have been signed, made, entered or presented by the proper party, parties, official, officials, entity or entities.

2.    Retention of Professionals.  The Trustees may consult with legal counsel and with independent public accountants and other professionals or experts.

3.    Reliance on Trustees.  No entity dealing with the Trustees or the officers, employees, professionals, agents or representatives of the Liquidating Trust shall be obligated to see to the application of any funds, securities, or other property paid or delivered to any of them or the Liquidating Trust or to inquire into the expediency or propriety of any transaction or the right, power or authority of the Trustees to enter into or consummate any transaction upon such terms as the Trustees deem necessary or appropriate.

E.    Indemnification.

1.    Payment of Expenses.  Expenses (including attorneys' fees) incurred in defending any action, suit or proceeding referred to above may be paid by the Liquidating Trust in advance of the final disposition of such action, suit or proceeding, upon an undertaking by the appropriate Trustee, officer, employee, professional, agent or representative of the Liquidating Trust to repay such amount if it shall ultimately be determined that such entity is not entitled to be indemnified.

2.    Insurance.  The Liquidating Trust may maintain insurance during its existence and after its termination, at its expense, to protect itself and the Trustees, officers, employees, professionals, agents and representatives of the Liquidating Trust of and from any liability,.    The terms "Trustees," "officers" "employees" "professionals," "agents" and "representatives" as used in this Agreement, where applicable, include the heirs, successors, executors, administrators, personal representatives, or estates of such persons or entities.

F.    Costs and Expenses of Trustees.

1.    Costs and Expenses.  The Trustees shall pay out of the Trust Estate all reasonable costs, expenses and obligations incurred by the Trustees in carrying out their duties under the Plan and this Agreement or in any manner connected, incidental or related to the administration of the Liquidating Trust, including:

i.    any reasonable fees and expenses of attorneys, accountants, investment advisors, expert witnesses, insurance adjustors, disbursing agents, property managers,

13

51

realtors, brokers, professionals or other entities whom the Trustees may deem necessary or appropriate to employ in connection with the Liquidating Trust, or on their own behalf in accordance with the terms of the Plan or this Agreement; and

ii.    any taxes, charges and assessments which may be owed by, or levied or assessed against, the Liquidating Trust, the Trust Estate or any property held in trust hereunder.

G.    Resignation and Removal.

1.    Resignation of Administration Trustees. Any of the Trustees may resign and be discharged from any future obligations and liabilities hereunder by giving written notice thereof to the other Trustees and the Bankruptcy Court at least thirty (30) days prior to the date of resignation set forth in the notice of resignation. Such resignation shall become effective after the day specified in such notice on the day when a successor Trustee is appointed pursuant to Section VIII(G)(3) below and the successor Trustee accepts such appointment in writing.

2.    Removal of Trustees. In addition, any of the Trustees may be removed with or without cause at any time by the affirmative vote of all of the other Trustees. Such removal shall be effective when a successor Trustee is appointed pursuant to Section VIII(G)(3) below and the successor Trustee has accepted the appointment in writing.

3.    Appointment of a Successor Trustee. If, at any time, one of the Trustees shall give notice of its intent to resign pursuant to Section VIII(G) hereof or shall be removed or shall become incapable of acting, the remaining Trustees shall give notice thereof to the Bankruptcy Court. Within thirty (30) days thereafter, the remaining Trustees shall choose and appoint a successor Trustee to act under the Plan and this Agreement if necessary to ensure that there will be not less than three (3) remaining Trustees. In the event that all of the Trustees give notice of their intent to resign pursuant to Section VIII(G) hereof or are removed or shall become incapable of acting or are deadlocked, the Bankruptcy Court shall, upon request by any Holder, or counsel to the Liquidating Trust, designate successor Trustees to act under this Agreement.

4.    Acceptance of Appointment by Successor Trustee. Any successor Trustee appointed hereunder shall execute an instrument accepting such appointment hereunder in the form determined by the remaining Trustees or the officers of the Liquidating Trust and shall file counterparts thereof with the Bankruptcy Court. Thereupon, such successor Trustee shall, without any further act, become vested with all of the estates, properties, rights, powers, trusts and duties of its predecessor in the Liquidating Trust hereunder with like effect as if originally named herein from that date forward.

IX.    Action by Trustees.

A.    Actions by Majority Vote. Unless otherwise specified herein, any action required or permitted to be taken by the Trustees pursuant to the Plan or this Agreement shall be taken by the affirmative vote at a meeting or by written consent of not less than a majority of a quorum of the Trustees. A majority of the Trustees shall constitute a quorum for purposes of a meeting of the Trustees and all of the Trustees shall constitute a quorum for purposes of action by written consent. The Trustees shall meet at such times and places as the Trustees deem necessary or

14

appropriate. The Trustees may delegate any of their powers or duties to a subcommittee of Trustees, or one or more officers, employees, professionals, agents or representatives as the Trustees deem necessary or appropriate. In carrying out any of the powers or duties delegated to them, such officers, employees, professionals, agents and representatives shall be entitled to the same rights, claims and protections as the Trustees would have had with respect thereto.

X.      Supplements and Amendments to this Agreement.

A.      Supplements and Amendment. Subject to the provisions of the Plan and this Agreement, at any time and from time to time, upon the affirmative vote or consent of each of the Trustees, and subject to approval by the Bankruptcy Court if sought by the Trustees pursuant to Section VIII(B) of this Agreement, the Trustees may execute a supplement or amendment hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Agreement, or amendments thereto, as specified in such vote or consent. In no event shall this Agreement be amended so as to change the purpose of the Liquidating Trust as set forth in the Plan or Section II above without the prior approval of the Bankruptcy Court after notice and opportunity for a hearing have been provided to the Holders and the Special Notice Entities.

B.      Trustees' Declining to Execute Documents. If, in the reasonable opinion of the Trustees, any document required to be executed pursuant to the terms hereof materially and adversely affects any immunity or indemnity in favor of the Trustees under this Agreement, the Trustees may in their discretion decline to execute such document.

C.      Notice of Form of Supplement and Amendments Requiring Vote or Consent. A copy of each amendment or supplement (or a fair summary thereof) shall be filed with the Bankruptcy Court and furnished to the Holders promptly after the execution thereof, except that with respect to any proposed amendment or supplement for which the consent of the Holders is required, the form of such proposed supplement or amendment (or a fair summary thereof) shall be furnished to the Holders in accordance with any applicable law prior to the Trustees' seeking the approval thereof by the Holders.

D.      Notice and Effect of Executed Amendment. Upon the execution of any amendment or supplement, this Agreement shall be deemed to be modified and amended in accordance therewith and the respective rights, limitations of rights, obligations, duties and immunities under this Agreement of the Trustees and the Holders shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, and all the terms and conditions of any such amendment or supplement shall be thereby deemed to be part of the terms and conditions of this Agreement for any and all purposes.

XI.     Miscellaneous.

A.      Title to Trust Estate. No Holder shall possess legal ownership of, or have title to, any part of the Trust Estate and no Holder shall have an interest in any specific property of the Liquidating Trust.

B.      Sales of Assets of the Trust Estate. Any sale or other conveyance of any assets of the Trust Estate, or part thereof, by the Trustees made in accordance with the terms of the Plan and this Agreement shall bind the Liquidating Trust and the Holders and shall be effective to

15

transfer or convey all right, title and interest of the Trustees, the Liquidating Trust and the Holders in and to such assets.

C.    Notices. Unless otherwise expressly specified or permitted by the terms of the Plan or this Agreement, all notices shall be in writing and delivered by registered or certified mail, return receipt requested, or by a hand or by facsimile transmission (and confirmed by mail), or by overnight courier, in any such case addressed as follows:

If to the Liquidating Trust:

> The Chorus Line Corporation and California Fashion Industries, Inc., Liquidating Trust, c/o Levene, Neale, Bender, Rankin & Brill L.L.P., Attention: David B. Golubchik, Esq., 1801 Avenue of the Stars, Suite 1120, Los Angeles, California 90067; Telephone: (310) 229-1234; Telecopier: (310) 229-1244.

> with a copy to:

> Ezra Brutzkus Gubner LLP, Attention: Steven T. Gubner, Esq., 16830 Ventura Boulevard, Suite 310, Encino, California 91436; Telephone: (818) 995-0215; Telecopier: (818) 501-3615

If to the Trustees:

> [insert names of Trustees]

D.    Severability.    Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction, unless the prohibition or unenforceability of such provision will materially change the purpose or effect of this Agreement.

E.    Counterparts. This Agreement may be executed in multiple counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument, and facsimile signatures shall have the same force and effect as original signatures.

F.    Binding Agreement. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, the Trustees and their respective successors and assigns and any successor Trustee provided for in Section VIII, and his or her respective successors and assigns, and the Holders, and their respective personal representatives, successors and assigns. Any request, notice, direction, consent, waiver or other instrument or action by any party hereto or any Holder shall bind their respective heirs, personal representatives, successors and assigns.

G.    Headings. The headings of the various Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

H.    Construction. Except where the context otherwise requires, words importing the masculine gender shall include the feminine and the neutral, if appropriate; words importing the

16

singular number shall include the plural number and vice versa; and words importing persons shall include partnerships, associations, and corporations.

I.     Governing Law. Except to the extent the Bankruptcy Code, the Bankruptcy Rules or other federal law may apply, this Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of California (excluding conflict of law rules), including all matters of construction, validity and performance.

J.     Construction with the Plan. The Plan is hereby incorporated fully by reference and is made a part hereof for all purposes. References herein to this Agreement shall refer only to this Agreement and shall not include the Plan unless otherwise indicated. In the event that the Plan and this Agreement are in contradiction, the terms of the Plan shall prevail.

K.     Subject to Bankruptcy Court's Jurisdiction. The Bankruptcy Court shall retain jurisdiction over this Agreement and the Liquidating Trust, the Trust Estate, the Trustees and the Debtors to: (a) ensure that the purposes and intent of the Plan and this Agreement are carried out; (b) issue any and all Orders and to take other actions necessary to the implementation of the Plan and this Agreement, such jurisdiction to include the jurisdiction contemplated by Section 1142 of the Bankruptcy Code; and (c) resolve any disputes regarding the employment or compensation of any officers, employees, professionals, agents or representatives of the Trustees or the Liquidating Trust. All provisions of this Agreement are subject to such continuing jurisdiction of the Bankruptcy Court. The Bankruptcy Court may interpret or enforce this Agreement upon request of a party in interest in accordance with the Bankruptcy Rules.

L.     Integration. The Plan and this Agreement supersede all negotiations concerning their subject matter which preceded or accompanied the execution and delivery of this Agreement. The Plan and this Agreement are intended as a final expression of agreement as to the terms set forth in the Plan and this Agreement and may not be contradicted by evidence of prior agreement or contemporaneous agreement. The Plan and this Agreement are also intended as a complete and exclusive statement of their terms.

///

///

///

///

///

///

///

///

///

17

IN WITNESS WHEREOF, the parties have executed or have hereunto caused this Agreement to be duly executed, as of the day and year first above written.

**DEBTORS:**

CHORUS LINE CORPORATION
         and
CALIFORNIA FASHIONS, INC.


By:_____
        Steven Hartman, Responsible Individual

**TRUSTEES:**

 [Insert name of Trustee]

 _____

 [Insert name of Trustee]

 _____

 [insert name of Trustee]

 _____

18

56

1

2

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

3

4

5

I am an employee in the County of Los Angeles, State of California. I am over the age of 18 and am not a party to the within action; my business address is: 1801 Avenue of the Stars, Suite 1120, Los Angeles, California 90067-5805.

6

7

8

On April 28, 2003, I served the foregoing document(s) described as DEBTORS' AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS' JOINT PLAN OF REORGANIZATION on the interested parties in this action by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid in the United States mail at Los Angeles, California, addressed as follows:

9

see attached service list

10

11

__X__   (By Mail) I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail. Executed on April 28, 2003, at Los Angeles, California.

12

13

_____   (By Facsimile) I caused said document to be sent via facsimile. Executed on _____ ___, 2003, at Los Angeles, California.

14

15

_____   (*By Personal Service) I caused such envelope to be delivered by hand to the offices of the addressee. Executed on ___ ___, 2003, at Los Angeles, California.

16

_____   (By Federal Express) I caused said document to be sent via Federal Express for next business morning delivery. Executed on ____, 2003, at Los Angeles, California.

17

18

19

__X__   (Federal) I declare that I am an employee in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

20

21

Bambi Clark

22

23

24

25

26

27

28

U.S. Trustee
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90012

Chorus Line/Cal. Fashion Ch 11 Debtors
Steve Hartman (1898-8)
Levine Leichtman Capital Partners, Inc.
335 N. Maple Dr., #240
Beverly Hills, CA 90210

Attorney for Committee Counsel
Robert Ezra, Esq. (1898-2)
Ezra Butzkus Gubner
16830 Ventura Blvd., #411
Encino, CA 91436

~~Attorneys for GMAC Commercial~~
~~Steven B. Soll, Esq. (1898-4)~~
~~Otterbourg, Steindler, Houston & Rosen~~
~~230 Park Ave.~~
~~New York, NY 10169-0075~~

Attorneys for HECNY Transportation, Inc.
John Clark Brown, Jr., Esq. (1898-5)
407 E. Florence Ave.
Inglewood, CA 90301

~~Attorneys for GMAC Commercial Credit~~
~~Scott Smith, Esq. (1898-3)~~
~~Buchalter, Nemer, Fields & Younger~~
~~601 S. Figueroa St., #2400~~
~~Los Angeles, CA 90017-5704~~

~~Counsel for Heller Financial, Inc.~~
~~Catherine D. Meyer, Esq. (#1898-43)~~
~~Pillsbury Winthrop LLP~~
~~725 S. Figueroa Street #3800~~
~~Los Angeles, CA 90017-5406~~

Attorneys for DN&E Walter & Co.
Neal L. Wolf, Esq. (#1898-44)
Orrick Herrington & Sutcliffe LLP
777 S. Figueroa St., #3200
Los Angeles, CA 90017

Attorneys for Jose A. Dias
Jeffrey S. Thomas, Esq. (1898-6)
Duran & Thomas
9200 Sunset Blvd., #1212
Los Angeles, CA 90069-3607

Attorneys for Remedy Temporary Svcs.
Arturo E. Matthews, Jr., Esq. (#1898-45)
Burnett & Matthews
4675 MacArthur Ct., Suite 1540
Newport Beach, CA 92660

Attorneys for Safeco
Steven L. Bergh, Esq. (#1989-46)
Prenovost Normandin Bergh & Dawe
2020 E. First St., #500
Santa Ana, CA 92705-4033

Attorneys for Mark Steinman
Steven Yankelevitz, Esq. (1898-47)
Liner Yankelevitz, et al
3130 Wilshire Blvd., 2nd Fl.
Santa Monica, CA 90403

Attorneys for Paul E. Johnson Ins. Svcs
Douglas R. Holmes, Esq.
15051 Leffingwell Rd., #201
Whittier, CA 90604-2159

Attorneys for Design Collection, Inc.
Michael C. Baum, Esq.
Law Offices of Michael C. Baum
10390 Santa Monica Blvd., 4th Floor
Los Angeles, CA 90025-5058

~~Heller Financial~~
~~Attn: Mary C. Alden, Esq.~~
~~505 N. Brand Blvd., 10th Fl.~~
~~Glendale, CA 91203~~

Leonard Rabinowitz
c/o John Shaeffer, Esq.
O'Donnell & Shaeffer
633 W. 5th St., 17th Fl.
Los Angeles, CA 90071

Carole Little
c/o John Shaeffer, Esq.
O'Donnell & Shaeffer
633 W. 5th St., 17th Fl.
Los Angeles, CA 90071

Attorneys for JL Group Company Limited
Ruth D. Kahn, Esq.
Steptoe & Johnson LLP
633 W. Fifth St., #700
Los Angeles, CA 90071-3500

Attorneys for Union Bank of California, NA
Susan L. Vaage, Esq.
Graham Vaage Cisneros & Peterson
500 N. Brand Blvd., #1030
Glendale, CA 91203

Attorneys for Murray Hill Property Mgmt
Gregory A. Bray, Esq.
Stroock & Stroock & Lavan LLP
2029 Century Park East, #1800
Los Angeles, CA 90067-3086

Attorneys for Tanger Properties Limited Partnership
Rochelle G. Simpson c/o Ron O. Cardwell, Esq.
Vernon Law Firm
522 S. Lexington Ave.
Burlington, NC 27215

Attorneys for Anne Bennion
Carl J. Kanowsky, Esq.
Hacker, Kanowsky & Braly, LLP
24510 Town Center Dr., #200
Valencia, CA 91355

Attorneys for Am. Plant Protection, Inc.
Michael D. Leventhal, Esq.
1880 Century Park East, 1511
Los Angeles, CA 90067

James Burshtyn, Esq.
Assistant Attorney General
Bankruptcy & Collections Division
POB 12548
Austin, TX 78711-2548

Attorneys for Unisys
Janet Fitzpatrick
Unisys Corporation
Unisys Way
POB 500, M/S E8-108
Blue Bell, PA 19424

Attorneys for Levine Leichtman Capital Partners
Michael L. Tuchin, Esq.
Klee, Tuchin Bogdanoff & Stern
1880 Century Park East, #200
Los Angeles, CA 90067

Attorneys for Manatee County Tax Collector
Vicky L. Zartman, CFCA
c/o Ken Burton, Jr.
819 WS 301 Blvd. W.
Bradenton, FL 34205

Attorneys for Cappello & McCann
Marc S. Cohen, Esq.
Kaye Scholer
1999 Avenue of the Stars #1700
Los Angeles, CA 90067

Attorneys for Advanta Leasing Services
Sandra I. Eisenrod, Esq.
HEMAR, ROUSSO & HEALD
15910 Ventura Blvd., 12th Flr.
Encino, CA 91436

Attorneys for US Dept of Labor
John C. Nagle, Esq.
Associate Regional Solicitor
U.S. Department of Labor
Los Angeles World Trade Center
350 S. Figueroa St., Suite 370
Los Angeles, CA 90071

Attorneys for Texas Comptroller of Public Accounts
Kay D. Brock, Asst. Attorney General
c/o Martha M. Pena, Legal Assistant
Office of the Attorney General
P.O. Box 12548
Austin, TX 78711-2548

~~Attorneys for Jose Dias~~
~~James A. Hinds, Jr./Paul R. Shankman~~
~~Law Offices of James A. Hinds, Jr.~~
~~1801 Century Park East #900~~
~~Los Angeles, CA 90067~~

Attorneys for Landlord – New Plan Factory Malls, Inc.
Joel F. Crystal, Esq.
New Plan Factory Malls, Inc.
1120 Ave. of the Americas, 12th Fl.
New York, NY 10036

Attorneys for Samsung America, Inc.
Nathan Yun, Esq.
Samsung America, Inc.
14251 E. Firesatone Blvd.
La Mirada, CA 90638

Attorneys for San Marcos CISD
Lori Robertson, Esq.
Linebarger Goggan Blair Pena
1949 South IH 35
Austin, TX 78741

Attorneys for Midway Rent A Car
M. Doherty, esq.
Molinos & Associates
4751 Wilshire Blvd., Suite 125
Los Angeles, CA 90010-3838

Attorneys for Banc America Commercial Credit
William H. Kiek,hofer, III
Mayer, Brown, Rowe & Maw
350 S. Grand Ave., 25th Floor
Los Angeles, CA 90071-1503

A&E Stores, Inc.
Attn: Cindy Ronson
1000 Huyler St.
Teterboro, NJ 07608

Steven Wax
J.G. Hook
70 W. 40th St., 8th Floor
New York, NY 10018

Chuck Gilman
Gilman Licensing
104 Fries Lane
Cherry Hill, NJ 08003

Andrew C. Kassner, Esq.
Drinker Biddle & Reath LLP
One Logan Square
18th and Cherry Street
Philadelphia, PA 19103-6996

Caz Speller
40 Washington St., #3N
East Orange, NJ 07017

Jose Luis Alvarez
2761 Cape Dr.
Corona, CA 92882

~~Bill Beaver, Regional Director~~
~~Pension & Welfare Benefits Administration~~
~~790 E. Colorado Blvd., Suite 514~~
~~Pasadena, CA 91101~~

Secretary of Labor, United States Dept of Labor
World Trade Center
350 S. Figueroa St., Suite 370
Los Angeles, CA 90071-1202

Silver Textiles
2121 S. Flower St.
Los Angeles, CA 90007

Muoi Huynh
113 S. Primrose Ave.
Alhambra, CA 91801

Jodi L. Smith, Vice President
Phoenix Management Solutions, LLC
10000 N. 31st Ave., Suite C301
Phoenix, AZ 85051

Attorneys for Zhejiang Animal By-Products
Timothy Krantz, Esq.
2082 Michelson Dr., Suite 212
Irvine, CA 92612